UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WOMEN & INFANTS' HOSPITAL
OF RHODE ISLAND

v.

COMMUNITY HEALTH NETWORK
OF CONNECTICUT, INC.

C.A. No. 04-0535/ML

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS**

Plaintiff Women & Infants' Hospital of Rhode Island objects to Defendant's Motion to Compel Plaintiff to Produce Documents Responsive to Document Requests for the reasons set forth in the attached Memorandum.

Plaintiff,
WOMEN & INFANTS' HOSPITAL
OF RHODE ISLAND,
By Its Attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel.: (401) 454-1042
Fax: (401) 454-1030

Date: January 18, 2006

CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the within Objection to Brooks R. Magratten, Esq., Vetter & White, 20 Washington Place, Providence, RI 02903, and Andrew Zeitlin, Esq., Shipman & Goodwin LLP, 300 Atlantic Street, Stamford, CT 06901, on this 18th day of January, 2006.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOMEN & INFANTS' HOSPITAL OF RHODE ISLAND<br><br>V.<br><br>COMMUNITY HEALTH NETWORK OF CONNECTICUT, INC. | C.A. No. 04-0535/ML |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS**

## I. INTRODUCTION

Plaintiff Women & Infants' Hospital of Rhode Island ("Women & Infants") filed this lawsuit against Defendant Community Health Network of Connecticut, Inc. ("CHN") to recover the costs of emergency health care services provided to a CHN member and her infant that CHN approved, but for which CHN refuses to pay Women & Infants. On August 1, 2005, Women & Infants filed its initial response to CHN's First Request for Production of Documents which asserted objections to some of the requests. Now, shortly before the close of discovery, CHN has propounded a flurry of discovery, including a voluminous Rule 30(b)(6) deposition notice. It has also filed the instant Motion to Compel concerning Women & Infants' objections asserted in response to the First Request for Production of Documents on August 1, 2005.[1] As explained more fully below, the objections are valid, and CHN seeks documents which are irrelevant, burdensome to produce, protected by confidentiality provisions in contractual agreements with third-party payors, and overly broad in scope and time.

[1] Although CHN's Motion seeks to compel a witness to testify regarding each item in the Rule 30(b)(6) deposition notice, the Motion is not captioned correctly, so Women & Infants' argument concerning the Rule 30(b)(6) deposition notice will be included in a Motion for a Protective Order to be filed contemporaneously with this Objection to Motion to Compel.

## II. FACTS AND TRAVEL OF THE CASE

### A. The Parties

Women & Infants is a healthcare provider with a principal place of business in Providence, Rhode Island. Women & Infants is the only tertiary referral center for peri-natal and high-risk obstetrics patients in Southeastern New England, providing emergency and routine medical services to patients in need of this specialized health care.

CHN is a managed care organization that contracts with the State of Connecticut to provide medical services to certain Connecticut citizens eligible to receive Medicaid benefits pursuant to Title XIX of the Federal Social Security Act and related state and federal rules and regulations. Pursuant to its contract with Connecticut and applicable federal laws and regulations, CHN is responsible for the payment of all emergency medical services provided to its members by out-of-state medical providers.

Specifically, Section 3.05(e) of the contract between the Connecticut Department of Social Services and CHN states: "The MCO (CHN) shall cover emergency care services provided while the member is out of the State of Connecticut, including emergency care incurred while outside the country." The contract further states in Section 3.05(m) that "[w]hen a Member's PCP or other plan representative instructs the Member to seek emergency care in-network or out-of-network, the MCO (CHN) is responsible for payment for the screening examination and for other medically necessary emergency services, without regard to whether the patient meets the prudent layperson standard described above."

Significantly, the contract also states in Section 3.05(o) that "[w]hen the MCO reimburses emergency services provided by an in-network provider, the rate of reimbursement will be subject to the contractual relationship that has been negotiated with said provider. When the MCO reimburses emergency services provided by an out-of-network provider within Connecticut, the rate of reimbursement will be no less than the fees established by the DEPARTMENT for the Medicaid fee-for-service program. When the MCO reimburses

emergency services provided by an out-of-network provider outside of Connecticut, the MCO may negotiate a rate of reimbursement with said provider."

### B. CHN Member Jane Doe Required Emergency Medical Services at Women & Infants

On June 19, 2003, Jane Doe, a member of the CHN managed care plan, presented herself for treatment at Middlesex Hospital in Middletown, Connecticut. At the time, she was approximately 25 weeks pregnant, suffered from chronic hypertension, and complained of a headache and right upper quadrant pain. The medical staff at Middlesex Hospital determined that Jane Doe was suffering from pre-eclampsia and that her condition required specialized emergency medical treatment that Middlesex Hospital could not provide to her. Given her emergency condition, Middlesex Hospital transferred Jane Doe to Women & Infants for admission.

Jane Doe had to be transferred to Women & Infants for emergency medical treatment, because neither Yale-New Haven Hospital nor the University of Connecticut Health Center had a room available. When Jane Doe arrived at Women & Infants on June 19, 2003, at 11:55 p.m., her history included chronic hypertension with elevated blood pressure in three past pregnancies and she reported decreased fetal movement. She received medication and tests were performed. Her blood pressure continued to increase and fetal heart tracings demonstrated decreased long term viability as well as intermittent decelerations. As a result of non-reassuring fetal assessment and pre-eclampsia, Jane Doe was taken to the operating room for an emergency cesarean section. Baby Doe was delivered on June 20, 2003, as a pre-term 470 gram infant and was admitted to the Women & Infants Neonatal Intensive Care Unit ("NICU").

### C. CHN Authorized the Medical Treatment and Must Pay For It

On June 20, 2003, Women & Infants contacted CHN, and Millie, a representative of CHN, confirmed Jane Doe's eligibility and authorized Women & Infants to provide emergency medical treatment to Jane Doe. Jane Doe gave birth to Baby Doe, a 25 week pre-term baby via emergency

caesarian section on June 20, 2003. After the birth of Baby Doe, Women & Infants contacted the Department of Social Services in Connecticut and provided all documentation to the Department pertaining to Baby Doe. On June 24, 2003, Women & Infants received notification from Social Services that Baby Doe was enrolled as a member of Medicaid. Baby Doe could not be enrolled in Medicaid prior to birth. Women & Infants received confirmation that enrollment eligibility was from the date of birth, June 20, 2003. Because Baby Doe was deemed Medicaid eligible, Baby Doe was covered by the contract in effect between CHN and the State of Connecticut. On July 8, 2003, Women & Infants received authorization to provide services to Baby Doe.

This Court agrees with Women & Infants' position that CHN must pay Women & Infants for medical services provided to Jane Doe and Baby Doe. Specifically, in denying CHN's Motion to Dismiss, the District Court held the following:

> W&I has proffered evidence that CHNC, through one of its employees, authorized plaintiff to provide medical services to Ms. Doe and her infant. If such approval was in fact conferred, albeit upon the hospital's initiation of contact with the defendant, it should have been plainly evident to CHNC, as a managed care organization, that the authorization would induce W&I to provide medical care to Ms. Doe in anticipation that CHNC would facilitate financial reimbursement for those services.

Memorandum and Order dated April 28, 2005, at 6 (emphasis added).

Jane Doe received medical services at Women & Infants from June 20, 2003, through June 24, 2003. The costs associated with her medical care totaled $16,065.68. Baby Doe received medical services from Women & Infants from June 20, 2003, through August 5, 2003, when Baby Doe was transferred to the NICU at Yale-New Haven Hospital. The costs associated with the medical care provided to Baby Doe totaled $251,134.02. These bills were submitted to CHN on July 2, July 10, and August 25, 2003.

On August 5, 2003, CHN sent an e-mail and a separate letter to Women & Infants in an attempt to negotiate a reimbursement rate for the services provided to Jane and Baby Doe. Negotiations between the parties were unfruitful and thereafter, Women & Infants filed a lawsuit against CHN seeking full reimbursement for the services rendered to Jane Doe and Baby Doe.

The fair and reasonable value of the emergency medical services provided by Women & Infants to Jane Doe and Baby Doe is $267,199.70. To date CHN has paid only $63,053.00,[2] leaving a balance of $204,146.70.

**D. Discovery Status**

As explained in the Complaint, Women & Infants seeks to be paid by CHN for the full value of the health care services under breach of contract (Count I), breach of implied duty of good faith and fair dealing (Count II), quantum meruit (Count III), unjust enrichment (Count IV), and book account (Count V) causes of action. Women & Infants also seeks its attorneys' fees pursuant to R.I.G.L. § 9-1-45 (Count VI).

Since this Court denied CHN's Motion to Dismiss, the parties exchanged paper discovery requests and responses, which were primarily completed in August 2005. On August 1, 2005, Women & Infants filed its initial response to CHN's First Request for Production of Documents which asserted objections to some of the requests. Women & Infants has already produced the entire medical record file and billing record file concerning the health care services at issue. Now, shortly before the close of discovery, CHN propounded a flurry of discovery, including a second request for production of documents, a request to admit, and a voluminous Rule 30(b)(6) deposition notice. It also filed the instant Motion to Compel concerning Women & Infants' objections asserted on August 1, 2005, in response to the First Request for Production of Documents.

The following discovery requests are the topic of CHN's Motion to Compel:

<u>REQ. 11</u> Each and every document constituting, referring or relating to reports, studies, or analyses of the costs of any of the services that Women & Infants provided to Ms. Doe and/or Baby Doe.

<u>RESP. 11</u> Objection. This request seeks irrelevant documents, documents which are overly burdensome to produce, and/or documents which contain proprietary and confidential information. The request is also overly broad in time and scope.

---

2 CHN's payment was less than what Connecticut Medicaid would reimburse a Connecticut provider.

REQ. 12 Each and every document constituting, referring or relating to invoices rendered by Women and Infants Hospital to any HMO, PPO, government agency, or medical insurance carrier, whether or not located in the State of Rhode Island, for services that are the same or similar to the services provided to Ms. Doe and Baby Doe.

RESP. 12 Objection. This request seeks irrelevant documents, documents which are overly burdensome to produce, and/or documents which contain proprietary and confidential information. Additionally, some of the documents and/or information responsive to this request are protected by confidentiality provisions in contractual agreements with third-party payors. The request is also overly broad in time and scope.

REQ. 13 Each and every document constituting, referring or relating to payments received by Women and Infants Hospital from or on behalf of any HMO, PPO, government agency, or medical insurance carrier, whether or not located in the State of Rhode Island, for services that are the same or similar to the services provided to Ms. Doe and Baby Doe.

RESP. 13 Objection. This request seeks irrelevant documents, documents which are overly burdensome to produce, and/or documents which contain proprietary and confidential information. Additionally, some of the documents and/or information responsive to this request are protected by confidentiality provisions in contractual agreements with third-party payors. The request is also overly broad in time and scope.

## III. ARGUMENT

The only issue in this case is the value of the professional services provided by Women & Infants to CHN's members. It is well-settled in Rhode Island that the value of the professional services of a health care provider in the absence of an express contract is the ordinary and reasonable price of services of a similar nature in the same locality. Best v. McAuslan, 27 R.I. 107, 60 A. 774 (1905). Women & Infants' entire billing record in this matter has been provided to CHN. For billing purposes, Women & Infants documented the health care provided to Jane Doe and Baby Doe as it would document the health care provided to any other patient.

Routinely, in the healthcare industry, healthcare providers contract with large volume purchasers of healthcare services such as private insurers or state and federal programs. Pursuant to these contracts, services are provided to members at a reduced rate. Healthcare entities provide these reduced rates because of the volume of patients it will receive based upon the contractual relationship, and the health care provider knows that the third party payor will pay

for the services rendered. As a result, administrative costs per patient are lower when a health care entity provides services to a large group.

Patients who are not members of groups with which Women & Infants contracts are charged Women & Infants' usual and customary rates. Reimbursement rates paid by groups that contract with Women & Infants are not a fair assessment of the reasonable charge for Women & Infants' services, because they do not take into account the benefits that Women & Infants receives by entering into contracts with large payors and does not acknowledge the inherent risks of handling individual payors such as higher administrative costs, including costs for individual debt collection and litigation. Ironically, the expenses associated with this lawsuit are a striking example of the higher administrative costs incurred when providing health care services to individuals who are not members of a group that has a pre-existing contract with the provider.

Apparently, CHN is claiming it should benefit from the bargain of Women & Infants' reimbursement contracts with insurers such as Blue Cross/Blue Shield of Rhode Island, United Health, and/or anyone else even though CHN is not a party to Women & Infants' contractual agreements with other third party insurers and has provided no consideration to rely upon these contracts. The only relevant inquiry is whether Women & Infants' charges for services provided to Jane Doe and Baby Doe are reasonable. Women & Infants should not be forced to add CHN to a contract with a third party private insurer after the fact. Accordingly, CHN's requests 11, 12, and 13 are irrelevant and overly broad in scope.

The health care services at issue were provided from June 19 through August 5, 2003. Therefore, this is the only relevant time period in this case. Accordingly, CHN's requests 11, 12, and 13 are overly broad in time.

Women & Infants' contractual agreements with third party private insurers contain confidentiality clauses which prohibit the distribution of the agreement to anyone without the express written consent of the insurer. Therefore, to the extent that this Court is even considering requiring Women & Infants to produce these agreements under a confidentiality order, the insurers must be notified so that they have an opportunity to present their position to

the Court. Accordingly, documents that are responsive to CHN's requests 11, 12, 13 are confidential, and there is no compelling reason to produce these documents in this case.

In order to respond to requests 11, 12, and 13 as presented, Women & Infants would have to obtain medical records regarding thousands of patients. Low birth weight patients such as Baby Doe typically have extended hospital admissions which result in voluminous medical and billing records. For example, the records produced in this case concerning Baby Doe were over three (3) inches thick. Additionally, Women & Infants has various consent and disclosure protocols which must be filed under federal and state law which would require a considerable amount of resources to satisfy. It could easily take thousands of hours to gather the responsive documents. Accordingly, it would be incredibly burdensome to produce documents in response to requests 11, 12, and 13.

Finally, CHN's reliance upon Medical Waste Technologies, LLC v. Alexian Brothers Medical Center, Inc., 1998 U.S. Dist. LEXIS 10104 (N.D. Ill.) (June 23, 1998), is misplaced. In that case, a plaintiff medical waste company filed a lawsuit as a result of an alleged breach of a joint venture agreement concerning a sophisticated business transaction. The defendants, a hospital laundry services company and several hospitals, filed a motion to compel the production of all the documents listed in the medical waste company's privilege log that had been withhold up to the date of the filing of the motion to compel. One of the many discovery disputes resolved by the court concerned relevance. In determining that the documents were discoverable, the court held that the documents were relevant to show the credibility of the plaintiff in similar transactions and especially whether the plaintiff had the ability to sue rotary autoclave technology which is an important issue in this litigation since the lack of such technology may have been the reason why the joint venture between the plaintiff and the defendant never came to fruition. That case had nothing to do with the cost of providing medical services and has no applicability to the instant dispute.

## IV. CONCLUSION

For the reasons set forth above, this Court should deny Defendant's Motion to Compel Plaintiff to Produce Documents Responsive to Document Requests.

Plaintiff,
WOMEN & INFANTS' HOSPITAL
OF RHODE ISLAND,
By Its Attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel.: (401) 454-1042
Fax: (401) 454-1030

Date: January 18, 2006

CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the within Memorandum to Brooks R. Magratten, Esq., Vetter & White, 20 Washington Place, Providence, RI 02903, and Andrew Zeitlin, Esq., Shipman & Goodwin LLP, 300 Atlantic Street, Stamford, CT 06901, on this 18th day of January, 2006.