UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOMEN & INFANTS' HOSPITAL OF RHODE ISLAND<br><br>v.<br><br>COMMUNITY HEALTH NETWORK OF CONNECTICUT, INC. | C.A. No. 04-0535/ML |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff moves for a protective order concerning items 7, 8, 9, 10, 11, and 12 of Defendant's Rule 30(b)(6) Notice of Deposition dated December 29, 2005, for the reasons set forth in the attached Memorandum.

Plaintiff,
WOMEN & INFANTS' HOSPITAL
OF RHODE ISLAND,
By Its Attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel.: (401) 454-1042
Fax: (401) 454-1030

Date: January 18, 2006

CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the within Plaintiff's Motion for a Protective Order to Brooks R. Magratten, Esq., Vetter & White, 20 Washington Place, Providence, RI 02903, and Andrew Zeitlin, Esq., Shipman & Goodwin LLP, 300 Atlantic Street, Stamford, CT 06901, on this 18th day of January, 2006.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WOMEN & INFANTS' HOSPITAL OF RHODE ISLAND<br><br>V.<br><br>COMMUNITY HEALTH NETWORK OF CONNECTICUT, INC. | C.A. No. 04-0535/ML |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

## I. INTRODUCTION

On Friday, December 30, 2005, approximately one (1) month before the close of discovery in this case, Plaintiff Women & Infants' Hospital of Rhode Island ("Women & Infants") received a Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure from Defendant Community Health Network of Connecticut, Inc. ("CHN") for the person with most knowledge of twelve (12) specific items. A copy of the Notice of Deposition is attached at Exhibit A. As explained below, six (6) of the twelve (12) items are completely irrelevant to the instant lawsuit. The parties have agreed to coordinate a mutually convenient date in January for the deposition of the witnesses concerning items 1, 2, 3, 4, 5, and 6. However, the parties disagree concerning items 7, 8, 9, 10, 11, and 12. Accordingly, Women & Infants files this Motion for a Protective Order to resolve this dispute.

## II. FACTS AND TRAVEL OF THE CASE

Women & Infants incorporates by reference the facts and travel of the case detailed in its Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Compel Plaintiff to Produce Documents Responsive to Document Requests which has been filed contemporaneously with this Motion for a Protective Order.

Additionally, on January 10, 2006, Women & Infants responded to CHN's Request for Admissions received on December 29, 2005, and responded to CHN's Second Request for Documents received on December 19, 2005. Although Women & Infants asserted objections to each request, the responses identified the reimbursement rates for Rhode Island Medicaid during the time period in which health care services were provided to Jane Doe and Baby Doe and provided copies of documents to evidence the explanation. Women & Infants also provided copies of the Provider Enrollment Agreement it had with the State of Connecticut in 2003 and additional documents regarding the reimbursement rate by the State of Connecticut for services. All documents produced are publicly available from either the State of Rhode Island or the State of Connecticut.

## III. ARGUMENT

### A. Standard for Obtaining a Protective Order

A party moving for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure must set forth "particular" facts to establish "good cause" for the order. Anderson v. Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986). "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Moore's Federal Practice, § 26.104[1], at 26-252 (3rd ed. 2005). What constitutes "good cause" generally depends on the type of protective order sought. Courts have recognized several general factors applicable to all protective orders including, the danger of abuse if a protective order is granted, the good faith of the various parties' positions, the adequacy of the protective measures provided by a protective order, and the availability of other means of proof. Id.

As explained below, the application of these factors reveals that Women & Infants has demonstrated "good cause" to obtain a protective order concerning items 7, 8, 9, 10, 11, and 12 of the Rule 30(b)(6) deposition notice.

**B. The Discovery in Dispute Should Not be Allowed**

With respect to the Rule 30(b)(6) deposition notice seeking deposition testimony from the person with most knowledge of certain items, the following items are disputed:

7. The Rhode Island Medicaid reimbursement rates, in 2003 and currently, for the services provided by Women & Infants Hospital to Ms. Doe and Baby Doe.

8. Women & Infants Hospital's participation, in 2003 and currently, in the Connecticut Medical Associate Program.

9. Any agreements, covering the time period 2003 to the present, between Women & Infants Hospital and the State of Connecticut concerning the provision of medical services.

10. The reimbursement rate, in 2003 and currently, set by the Connecticut Department of Social Services for Connecticut Medicaid eligible recipients, for the services provided to Ms. Doe and Baby Doe.

11. Amounts charged by Women & Infants Hospital to any HMO, PPO, government agency, or medical insurance carrier for providing any of the services that Women & Infants Hospital provided to Ms. Doe and Baby Doe.

12. Amounts received by Women & Infants Hospital from or on behalf of any HMO, PPO, government agency, or medical insurance carrier for any of the services that Women & Infants Hospital provided to Ms. Doe and Baby Doe.

There are several issues concerning the disputed Rule 30(b)(6) areas of inquiry. First, the health care services at issue were provided from June 19 through August 5, 2003. Therefore, this is the only relevant time period in this case. Accordingly, all disputed items are overly broad in time.

Second, even assuming that the items are limited to 2003, Rhode Island Medicaid's reimbursement rates (item 7), whether Women & Infants participated in the Connecticut Medical Assistance Program (item 8), whether Women & Infants had an agreement with the State of Connecticut (item 9), and Connecticut Medicaid's reimbursement rates (item 10) are completely irrelevant to the instant dispute between the parties, because the only issue in this case is the value of the professional services provided by Women & Infants to CHN's members.

Third, it is undisputed that Women & Infants has billed CHN $267,199.70 for the health care services provided to Jane Doe and Baby Doe, that CHN has paid Women & Infants

$63,053.00, and that Women & Infants is claiming a balance of $204,146.70. There is no dispute concerning the mathematical calculations. It is also undisputed that Women & Infants has not been paid from any other source. Therefore, undersigned counsel contacted CHN's counsel to inquire why a deposition would be needed concerning items 11 and 12. In discussions with CHN's counsel, Women & Infants learned that CHN contends that items 11 and 12 seek information regarding services that are the same or similar to the services provided to Jane Doe and Baby Doe. Although Women & Infants disagrees with this interpretation of items 11 and 12, out of an abundance of caution, Women & Infants' Motion for a Protective Order includes this expansive interpretation of items 11 and 12, because information regarding third party private payors is not relevant to this case or discoverable.

Routinely, in the healthcare industry, healthcare providers contract with large volume purchasers of healthcare services such as private insurers or state and federal programs. Pursuant to these contracts, services are provided to members at a reduced rate. Healthcare entities provide these reduced rates because of the volume of patients it will receive based upon the contractual relationship, and the health care provider knows that the third party payor will pay for the services rendered. As a result, administrative costs per patient are lower when a health care entity provides services to a large group.

Patients who are not members of groups with which Women & Infants contracts are charged Women & Infants' usual and customary rates. Reimbursement rates paid by groups that contract with Women & Infants are not a fair assessment of the reasonable charge for Women & Infants' services, because they do not take into account the benefits that Women & Infants receives by entering into contracts with large payors and does not acknowledge the inherent risks of handling individual payors such as higher administrative costs, including costs for individual debt collection and litigation. Ironically, the expenses associated with this lawsuit are a striking example of the higher administrative costs incurred when providing health care services to individuals who are not members of a group that has a pre-existing contract with the provider.

Apparently, CHN is claiming it should benefit from the bargain of Women & Infants' reimbursement contracts with insurers such as Blue Cross/Blue Shield of Rhode Island, United Health, and/or anyone else even though CHN is not a party to Women & Infants' contractual agreements with other third party insurers and has provided no consideration to rely upon these contracts. The only relevant inquiry is whether Women & Infants' charges for services provided to Jane Doe and Baby Doe are reasonable. Women & Infants should not be forced to add CHN to a contract with a third party private insurer after the fact. Accordingly, items 11 and 12 are irrelevant and overly broad in scope.

Additionally, Women & Infants' contractual agreements with third party private insurers contain confidentiality clauses which prohibit the distribution of the agreement to anyone without the express written consent of the insurer. Therefore, to the extent that this Court is even considering requiring Women & Infants to discuss these agreements at a deposition, the insurers must be notified so that they have an opportunity to present their position to the Court. Accordingly, items 11 and 12 seek confidential information, and there is no compelling reason to disclose this confidential information in this case.

## IV. CONCLUSION

For the reasons set forth above, Women & Infants' Motion for a Protective Order should be granted.

Plaintiff,
WOMEN & INFANTS' HOSPITAL
OF RHODE ISLAND,
By Its Attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel.: (401) 454-1042
Fax: (401) 454-1030

Date: January 18, 2006

CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of the within Memorandum in Support of Plaintiff's Motion for a Protective Order to Brooks R. Magratten, Esq., Vetter & White, 20 Washington Place, Providence, RI 02903, and Andrew Zeitlin, Esq., Shipman & Goodwin LLP, 300 Atlantic Street, Stamford, CT 06901, on this 18th day of January, 2006.